FLEET NATIONAL BANK

v.

John D. MIGLIETTA et al.

No. 91–42–Appeal.

Supreme Court of Rhode Island.

May 19, 1992.

Barry Hittner, Richard Borod, Edwards & Angell, Providence, for plaintiff.

Richard W. Zacks, Winograd & Shine, Ellen Benson, Winograd, Shine & Zacks, David Riedel, Andrew Prescott, Welling Thomas, Tillinghast, Collins & Graham, Lauren Jones, Jones Associates, Steven I. Rosenbaum, Hodosh, Spinella & Angelone, Providence, Kenneth Pearson, Gluss, Pearson, Scherago & Crannage, Philip Brawner, Howard, Brawner & Stone, Robert C. Agee, Joseph L. Kay, Jay Levine, Bigham, Englar, Jones & Houston, David F. Fox, Middletown, Samuel A. Olevson, Pucci & Goldin, Inc., Mark A. McSally, Providence, David H. Ferrara, Taft & McSally, Cranston, Gayle F. Tarzwell, Wakefield, Elizabeth Peterson Santilli, Andrew H. David, Jr., Davis, Jenckes, Kilmarx & Swan, Providence, Mark B. Heffner, Breslin, Sweeney & Earle, Warwick, for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court on a petition for clarification filed by the trustee, Fleet National Bank, following the issuance of our opinion in *Fleet National Bank v. Miglietta*, 602 A.2d 544 (R.I.1992) (*Miglietta I*). In that case we were asked to answer a question submitted by the parties and certified by the Superior Court concerning the distribution of the principal of a special trust created pursuant to the will of Samuel Pomeroy Colt. We determined that the principal of the special

trust created by the 27th clause (hereafter the 27th-clause special trust) of the testator's will should be distributed according to the instructions of the 28th clause of the testator's will. As a result of this determination, new questions have arisen concerning distribution of the principal of the special trust. Since the trustee and the parties failed to inform the court at the time we were considering *Miglietta I* that these new questions would arise, we have granted the trustee's motion for clarification in order to address these issues.

The trustee requests that two questions be answered in its motion for clarification. First, the trustee asks, "With respect to the three-sixths that would go to Russell, Roswell, and LeBaron if they were alive, how should the share of any grandchildren of LeBaron who is now deceased be distributed?" Next the trustee asks, "With respect to the remaining three-sixths, should the shares of the children of Russell, Roswell, and LeBaron who died without having had issue be distributed to the testator's estate as intestate property or to the testator's heirs-at-law determined as of the respective dates of death of such children?"

## I

■ In *Miglietta I* we determined that according to the instructions in the 28th clause of the testator's will, three-sixths of the 27th-clause special trust fund that "would go to Russell, Roswell, and LeBaron if they were alive should be distributed according to the rule established in *Flynn.*" 602 A.2d at 550. *Industrial Trust Co. v. Flynn,* 74 R.I. 396, 60 A.2d 851 (1948), instructs that "upon the death of each first life tenant the income from his particular share was given in equal shares to the surviving children of that first life tenant as individuals for and during their respective lives."[1] *Id.* at 415, 60 A.2d at 860. Thus the rule established in *Flynn* holds that the children of Russell, Roswell, and LeBaron would share equally the share to which their father was entitled.

The first question posed in the petition for clarification asks specifically how the three-sixths share that would go to Russell, Roswell, and LeBaron if they were alive should be distributed to the grandchildren of LeBaron. This question is significant because three of LeBaron's grandchildren—Theodora Barrows McCue, Edwin A. Barrows, Jr., and Barbara Barrows Nightingale—have died leaving issue. The trustee asserts that there are two possible answers to this question. First, LeBaron's grandchild's share could be distributed to their issue per stirpes. Second, LeBaron's grandchild's share could be distributed to the grandchild's estate.

Relying on the plain language of the *Miglietta I* opinion, we determine that LeBaron's grandchildren's share of LeBaron's one-sixth share of the 27th-clause special trust fund should be distributed to each of the grandchildren's estate. In *Miglietta I* we stated, "[T]he grandchildren are entitled to receive a per stirpes share of what their parents were entitled to discharged of all trust. *See Flynn,* 74 R.I. at 415–16, 60 A.2d at 860." 602 A.2d at 550. The plain meaning of this sentence is that the grandchildren of Russell, Roswell, and LeBaron receive a per stirpes share of what their parents received from their own father or mother. Moreover, this per stirpes share is discharged of all trust. The *Flynn* court reached the conclusion that this distribution was discharged of trust because, if the distribution were not discharged of trust, the rule against perpetuities would be violated, the gift over would be void, and thus the testator's intent would be defeated. *See* Flynn, 74 R.I. at 415–16, 60 A.2d at 860. The *Flynn* court stated that "the income of which each second life tenant individually was entitled for life, was then vested in interest individually and independently in the child, or in equal shares in the children * * * of such second life tenant * * * vested in enjoyment in and was distributable to her children, *per stirpes* and not *per capita,* as an estate in fee simple

---

1. The term "first life tenant" has been used in previous opinions concerning this case to describe a group consisting of the testator's two sons, Russell and Roswell, and his brother, LeBaron.

free of all trust." [2] *Id.* Thus the chain of distribution ends, and the money should remain in the grandchild's estate.

The *Miglietta I* opinion also further discussed the court's decision in *Flynn.* We said of the result in *Flynn* that "the three children of Theodora Barrows split in three portions the income that she had received before her death from the 27th-clause special trust. *Id.* at 416, 60 A.2d at 860." 602 A.2d at 548. Of course, Theodora Barrows was a daughter of LeBaron and therefore her children were his grandchildren. A review of what *Flynn* says on the cited pages is enlightening. It states that the net income from the 27th-clause special fund is distributed to Theodora Barrows's children "as follows: one-third thereof to the *estate* of Theodora Barrows McCue, her deceased daughter; one-third thereof to her son Edwin A. Barrows, Jr.; and one-third thereof to the *estate* of Barbara De-Wolf Nightingale, her other deceased daughter." (Emphasis added.) *Flynn,* 74 R.I. at 416, 60 A.2d at 861. This passage clearly indicates that if a grandchild dies, the income from the 27th-clause special trust goes to that grandchild's estate.

Therefore, we answer trustee's first question by stating that with respect to the three-sixths that would go to Russell, Roswell, and LeBaron if they were alive the share of each of LeBaron's grandchildren should be distributed to the grandchild's estate.

## II

██ The second question proposed by the trustee essentially asks whether, with respect to the remaining three-sixths of the 27th-clause special trust, the shares of Russell Colt's sons, Samuel and John; Roswell Colt's son, Byron; and LeBaron Colt's daughter, Mary Gross should be distributed to the testator's estate as intestate property or to the testator's heirs at law determined as of the respective dates of death of such children as directed by the 28th clause.

In *Miglietta I* we determined that "[t]he remaining three-sixths [of the 27th-clause special trust fund] shall be distributed according to the instruction in the 28th-clause." 602 A.2d at 550. The pertinent part of the 28th clause for answering the trustee's second question states:

"[I]n case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last named child or children shall die leaving no child or children surviving him, her or them, as the case may be, then my Trustee shall convey, transfer and set over, discharged of all trust, the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled if living, to the person or persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heir-at-law * * * ."

This court had the opportunity to construe this language in *Industrial National Bank v. Morey,* 86 R.I. 15, 133 A.2d 724 (1957). As we said in *Miglietta I,* the court in *Morey* was asked to determine whether the instructions in question in the 28th clause of the testator's will effectuated a gift that violated the rule against perpetuities. 602 A.2d at 548. This issue arose because of the death of Mary Colt Gross, the daughter of LeBaron Colt, who died without issue. The court determined that the testator's instructions that the trustee convey shares of his trust according to the intestacy laws of the state if any of the testator's gifts fails because of a beneficiary's dying without issue did violate the rule against perpetuities. *Id.* at 20, 133 A.2d at 728. The court reasoned that "there is a possibility that the gift to such specially described heirs would not vest within the period of a life or lives in being and twenty-

---

**2.** The term "second life tenant" has been used in previous opinions concerning this case to describe a group consisting of Russell's three children: Samuel P. Colt, Ethel Miglietta, and John Colt; Roswell's four children: Elizabeth Stans-field, Caldwell Colt, Melba Delmouzos, and Bryan Colt; and LeBaron's three children: Theodora Barrows, Mary Gross, and Elizabeth Anthony.

one years thereafter." *Id.* Thus the court ordered the trustee to pay Mary Colt Gross's share of the 28th-clause trust to the testator's estate as intestate property. *Id.* at 22, 133 A.2d at 728–29.

That opinion would seem to answer the second question proposed by the trustee. Mary Colt Gross was a child of LeBaron who died without issue. Thus the facts of *Morey* correspond exactly to this question proposed by the trustee. Our answer to the trustee's question, however, is also affected by our decision in *Fleet National Bank v. Colt*, 529 A.2d 122 (R.I.1987).

In *Colt*, as we stated in *Miglietta I*, the issue to be decided arose upon the death of Caldwell Colt, a son of Roswell Colt. Caldwell left two surviving children, Samuel P. Colt and Julia Wedgewood Colt. The court determined that neither child was a life in being at the death of the testator or at the death of Roswell for purposes of the rule against perpetuities. *Colt*, 529 A.2d at 125. Thus, the issue arose whether Caldwell's children may inherit their father's second life tenant share of the testator's estate.

> The *Colt* court stated that
>
> "we must determine whether his [Caldwell's] shares vest in his children's possession within a life in being plus twenty-one years. This life in being must bear a causal relationship to the vesting of interests under the Will because * * * the wait-and-see doctrine limits the range of possible measuring lives by requiring that they bear a causal relationship to the vesting of the future interest question." *Id.* at 130.

The court defined causal relationship as " 'encompass[ing] every relationship that any validating life at common law bears to vesting. It embraces every person who, in the particular situation, can affect vesting.' " *Id.* The court determined that Elizabeth Stansfield, Caldwell Colt's sister, was a life in being and an acceptable measuring life. *Id.* Furthermore the court decided that Elizabeth Stansfield was causally connected to the life estate of her siblings and therefore to the remainder interest in her siblings' children. *Id.* As a result Caldwell Colt's children could receive his share of the 27th clause and 28th clause income since the gift does not violate the rule against perpetuities.

█ For purposes of the present case, *Colt* stands for the proposition that Elizabeth Stansfield is an acceptable measuring life for the rule against perpetuities. Thus as an acceptable measuring life she shields the shares that others can receive from invalidation by the rule against perpetuities. Nevertheless, the measuring life must be causally connected to the interests it protects. Elizabeth Stansfield is causally connected only to Byron Colt, her brother, because he is the only one that her life can have an effect on vesting. *See id.* Elizabeth Stansfield's life has no effect on the vesting of shares in Samuel Colt and John Colt, the sons of Russell Colt, or in Mary Colt Gross, the daughter of LeBaron Colt.

Therefore, Byron Colt's share of the remaining three-sixths of the 27th-clause special trust is not subject to the rule against perpetuities and can be distributed to the testator's heirs at law as directed by the 28th clause. The agreed statement of facts submitted by the parties to *Miglietta I* stipulates that the testator's heirs at law at the time of Byron Colt's death were Samuel P. Colt, Ethel Colt Miglietta, John D. Colt, Elizabeth C. Stansfield, Caldwell C. Colt, and Melba Colt Delmouzos, all grandchildren of the testator. A distribution in accordance with the instructions of the 28th clause, of the share of the 27th-clause special trust fund principal from which Byron Colt received the income during his lifetime, would give to each of those six grandchildren a one-sixth share of such distribution. The shares of the testator's two surviving grandchildren, Elizabeth and Melba, should be added to their 28th-clause trusts. The four remaining shares distributable to now-deceased grandchildren should be distributed to the estates of such deceased grandchildren.

█ As far as the remaining grandchildren—Samuel Colt, John Colt, and Mary Colt Gross—are concerned, the rule against perpetuities applies and, therefore, the *Morey* precedent is controlling. Thus Sam-

uel Colt's, John Colt's, and Mary Colt Gross' shares of the remaining three-sixths of the 27th-clause special trust fund should be distributed to the testator's estate as intestate property. *See Morey,* 86 R.I. at 22, 133 A.2d at 728–29.

Having answered both questions requested by the trustee, we remand the papers of this case to the Superior Court for proceedings consistent with this opinion.